# Decisions of the Supreme Court of Missouri,

## ST. LOUIS DISTRICT, MAY TERM, 1828.

---

### LA GRANGE, *alias* ISIDORE, *v.* CHOUTEAU.

1. The ordinance of 1787, was intended as a fundamental law, for those who may choose to live under it, rather than as a penal statute.
2. In construing the ordinance, the Court will not be tied down to the particular exceptions contained therein, but will look at its spirit and object.
3. Any sort of residence contrived or permitted, by the legal owner of the slave, upon the faith of secret trusts or contracts, in order to defeat or evade the ordinance, and thereby introduce slavery de facto, would entitle such slave to freedom.
4. A citizen of Illinois, and resident there, may own and employ slaves in this State ; and the occasional visits of the slave to that State, do not constitute such a *residence* as entitles the slave to freedom.

### APPEAL from St. Louis Circuit Court.

WASH, J., delivered the opinion of the Court.

This was an action of trespass *vi et armis*, under the statute, to try the right of said Francois to freedom. Chouteau had judgment in the Circuit Court, from which Francois has appealed to this Court. The material facts (as preserved by a bill of exceptions,) are stated by the appellant's counsel. That in the year 1816, one Pascal Cerre, being the owner of said appellant, (who it is admitted was not then entitled to his freedom,) was desirous of selling said slave, and the said Pierre Chouteau, jr., the appellee, wished to purchase him. That Cerre declined selling the slave to Chouteau, because he, Cerre, wished to sell him to some person who would remove him from St. Louis.

That one Pierre Menard, a citizen of Illinois, and then residing at Kaskaskia, proposed purchasing the appellant, and accordingly Cerre sold him to said Menard for the sum of $500, which was paid by said Menard. That said Menard, immediately after said sale, took said appellant to Ste. Genevieve, and from thence sent him to (21) work at Mine a la Motte, in Washington county, in this State. That some time afterwards, the appellant was sent to Kaskaskia, where he was put on board a keel-boat, and after remaining about two days, went in said boat as a working hand to New Orleans. That about the last of March, 1817, the said appellant returned in the same boat to Kaskaskia, where he remained a few days, (one witness stated eight or nine,) assisting to unload said boat. Then was sent in said boat to the big swamp in Cape Girardeau county; and after remaining there five or six weeks, returned in the boat to Kaskaskia, and after two or three days, he was sent to St. Louis and delivered to the defendant, where he has remained ever since—and that said Chouteau, since said delivery, in consideration thereof, has paid the sum of $500 to said Menard.

It further appears from the testimony of said Menard, preserved in the bill of exceptions, that he, Menard, never bought the appellant with the intention of keeping him, or making Kaskaskia his place of residence; but that the slave had been purchased by him for Chouteau, to whom he was to be delivered after a few months; the object being to get around Cerre's objections to selling him in St. Louis. At the trial in the Circuit Court, the counsel for the appellant moved the Court to instruct the jury—

First. That if the jury shall be of opinion that the plaintiff remained in the State of Illinois with the person who purchased him, and who was a resident of said State, they must find for the plaintiff

Second. That the right of the plaintiff to his freedom is not affected by any secret trust or understanding between the person who purchased and brought him to Illinois, and any other person whatsoever.

Third. That if the jury shall be of opinion, that the plaintiff was during any time lawfully a resident of the State of Illinois, and in the service of a citizen of that State, claiming property in, and owner of said plaintiff, they shall find a verdict for the plaintiff.

Fourth. That if the jury shall be of opinion that the plaintiff was sold absolutely by a citizen of the State of Missouri to a citizen of the State of Illinois, and belonged under such sale to said purchaser, no secret understanding between said purchaser and a third person shall affect the rights which the plaintiff may otherwise have to his liberty, as a consequence of his residence in the State of Illinois.

The Court refused to give the first, second and fourth instructions—gave the third (22) as asked, and in lieu of the fourth, instructed the jury, that if they believed the plaintiff was bought by Col. Menard, for his own use, and taken to Illinois and kept there with the intention to make that the slave's permanent place of residence, they ought to find for the plaintiff. The refusal of the Court to give the instructions asked for, is assigned for error; and the cases af Merry *v.* Menard & Tiffin, and Winny *v.* Pettibone, decided by this Court, have been relied on as giving a construction to the ordinance of 1787, in favor of the plaintiff's claim on the ground of *residence.*— Without adverting to the precise terms of those decisions, it may suffice to state, that they cannot be made to push the principle so far. Any sort of residence contrived or permitted by the legal owner, upon the faith of secret trusts or contracts, in

La Grange *v.* Chouteau.

order to defeat or evade the ordinance, and thereby introduce slavery de facto, would doubtless entitle a slave to freedom, and should be punished by a forfeiture of title to the property. In this case, it is most apparent that the object of Menard and Chouteau, was to get round the objections of Cerre, and not to evade or violate the ordinance. This Court has decided, that it will not be tied down to the particular exceptions contained in the ordinance, but will look at its spirit and object, and a case cannot be well conceived that could fall more fully without the spirit of its provisions. The owner of a slave removing to Illinois, and carrying his slave along with him to reside there permanently, must intend to introduce " involuntary servitude or slavery," against the express terms of the ordinance; but the owner of a slave who is merely passing through the country with him, or who may be resident in Illinois and may choose to employ him in Missouri in mining, or as a sailor, or boat hand, upon the river or high seas, in boats or vessels that occasionally lade and unlade their cargoes at some port or place within the State, though he may not do much in " extending the fundamental principles of civil and religious liberty" certainly, does nothing towards engrafting slavery upon the social system of the State. It may be seen at once, to what injury and inconvenience a contrary doctrine would lead. The ordinance was intended as a fundamental law, for those who may choose to live under it, rather than as a penal statute to be construed by the letter against those who may choose to pass their slaves through the country. Under this view of the case, it is immaterial whether Menard was the owner or bailee of the slave. It is very certain that no secret trust or understanding with Chouteau, touching the title of the slave, could have prevented the operation of the ordinance, if the (23) residence had otherwise been sufficient to entitle the plaintiff to freedom; but it is equally certain that no such residence is proven.

The first instruction prayed for, was altogether too general, and was rightly refused. The second and fourth might have been given or refused without prejudice to either party. The position assumed by the appellant's counsel was correct in the abstract, but not arising in the cause, the Court did right to refuse the instruction. The third instruction, which was given, placed the question of residence on its true ground. The residence of the owner may be looked to, not as fixing the residence of the slave, but as one circumstance along with others from which the jury may infer the intention to evade the ordinance.

Upon the whole matter the judgment of the Circuit Court is affirmed.