GEORGE L. JOHNSON *vs.* B. E. SEDBERRY and others.

Where two or more plaintiffs had, prior to the adoption of the new Constitution and the Code of Civil Procedure, obtained judgments at the same term of the County Court of a County, and then after such Constitution and Code had been adopted, transferred them to the docket of the Superior Court, at different times, but all within six months as required by the sections 400 and 403 of the C. C. P., and had then issued executions on them at different times, but all came to the Sheriff's hands before the sale of the defendant's land; *it was held* that under Art. 4, Sec. 25, of the Constitution, which ordains that "actions at law, and suits in Equity, pending when this Constitution shall go into effect, shall be transferred to the Courts having jurisdiction thereof, without prejudice by reason of the change," the proceeds of the sale under the executions shall be applied *pro rata* to all of them.

The case of *Norword* v. *Thorp*, 64 N. C. Rep. 682, cited and approved.

RETURN of the Sheriff of Cumberland County, asking instructions from the Court as to the application of a sum of money raised by virtue of sundry executions in his hands, brought before *Buxton, J.,* at Spring Term, 1870, of the Superior Court of CUMBERLAND County.

It appeared that the money was raised out of the land of the same defendant, one T. J. Johnson, under executions in favor of the present plaintiff and the present defendants, B. E. Sedberry and Barrett, Stephens & Co. These parties

had all obtained judgments against the said T. J. Johnson at the December Term, 1867, of the County Court of Cumberland. The judgments all remained unsatisfied until after the adoption of the Code of Civil Procedure, when those of the present defendants were docketed in the Superior Court on the 22nd January, 1869, and that of the present plaintiff on the 29th day of the same month. Executions in favor of Ledberry and Barrett, Stephens & Co., were issued on their judgments the 13th April, 1870, and in favor of George L. Johnson, on the 20th day of the same month, all returnable to the same Term of the Court. Sedberry and Barrett, Stephens & Co., claimed the whole proceeds of the sale, upon the ground that their judgments were first docketed in the Superior Court, while G. L. Johnson contended that he was entitled to participate with them because all the judgments had been obtained at the same December Term, 1867, of the County Court of Cumberland, and were then all *transferred* under the law to the Superior Court docket, and not merely docketed as contended for by the other parties.

Upon consideration and comparison of Sec. 403, of the C. C. P., with the rules of practice adopted by the Supreme Court, (see 19 and 21 Rules, published in 63 N. C. Rep. 669,) his Honor came to the conclusion that no lien had been acquired by any of the executions previous to the ratification of the C. C. P., and that the priority of the executions would have to be regulated by the dates of their being docketed in the Superior Court, decided that the Sheriff ought to apply the proceeds of the sale in his hands to the executions of Sedberry and Barrett, Stephens & Co., to the exclusion of that of G. L. Johnson. From this order, G. L. Johnson appealed to the Supreme Court.

At the June Term, 1870, of the Supreme Court, the following opinion of the Court was filed by Rodman, J.

" The sections of the Code, cited by Mr. Hinsdale, give a priority of lien to the judgments that were first docketed,

and the fund must be decided accordingly. There is no error."

At the present Term of the Court a petition to re-hear the judgment rendered at the last Term was filed, and was argued by

*W. McL. McKay,* for the plaintiff.
*Hinsdale,* for the defendant.

PEARSON, C. J. At the last term, Mr. McKay put the case upon the ground that the judgments in the County Court had a lien on the land. We thought the position untenable. A short opinion was filed, and the order made, without any special reference to the fact that the judgment had been rendered in the County Court under the old system. The purpose of the petition to rehear, is to present the point that there is a distinction between judgments rendered under the old system, and judgments rendered under the C. C. P.

The position now taken by Mr. McKay is this: By the Constitution, *Art. 4, Sec. 25,* it is ordained, "Actions at law, and suits in equity, pending when this Constitution shall go into effect, shall be transferred to the Courts having jurisdiction thereof, *without prejudice by reason of the change.*" The three judgments being rendered at the same term of the County Court, stood in that Court upon an equal footing, and no one of the plaintiffs could have gained priority by having his execution issued before the others, for all the executions would have related to the *teste,* and stood on equal footing; and if, by reason of the transfer, one plaintiff can, because of having his judgment actually transferred and put on the docket in this new Court a few days before the others, gain priority, notwithstanding the other judgments are transferred and put on the docket within the time allowed by law, to-wit: six months, *(Secs. 400, 403, C. C. P.,)* the latter would, without laches on their

part, be prejudiced by the change of the Court system, contrary to the meaning of the Constitution.

This is a strong position, and upon consideration we have come to the conclusion it is well taken. Under the old system neither party was exposed to the chance of a foot-race, as it was termed on the argument, as to who should have his execution issued first; and if, under the new system, he is exposed to the chances of a race as to who should have his judgment transferred first, although the judgments were all transferred within the time allowed by law, the change of system would be attended by this prejudice, and yet no laches can be attributed to any of the plaintiffs. The only way to avoid this result is, to hold that judgments standing on the same footing in the County Courts, remain on the same footing in the new Superior Court, provided all are transferred within time, and are followed up by executions taken out and put in the hands of the sheriff before a sale under an execution issued before upon one or more of such judgments—which is our case. The maxim, "*leges vigilantibus non dormientibus subvenient*," at the common law, was not intended to encourage an indecent rush, or foot-race, to see who can, by adroitness, manage to be first in point of time; but was intended to secure reasonable diligence, and prevent laches; so when a plaintiff is within time, he is not to be prejudiced by the fact that some other had been a little quicker in his motions. Upon this principle is based the rule that all judgments rendered at the same term relate to the first day of the term, and stand on equal footing. *Norwood vs. Sharp*, 64, *N. C.*, 680.

It is true, the Code of Civil Procedure has, to some extent, departed from this view of the maxim, "*leges vigilantibus*," &c., and in many cases gives priority to the plaintiff who is the swiftest in his motions; but the Court is not authorized to extend that idea so as to make it apply to judgments rendered before the adoption of the Code, in the

face of a constitutional provision for making the transfer without prejudice. Indeed, the operation of the new rule seems to work so badly in respect to several matters, in cases where judgments are taken under the C. C. P., as to result in positive mischief, and a temptation to unfair dealing. The Justices of this Court consider they have power to apply the remedy by prescribing rules of practice and procedure in the Superior Courts. *Sec.* 394.

One instance is this: Judgments docketed in a county, other than that in which they are rendered, have a lien from the time the transcript is delivered to the clerk. Suppose, during the term a judgment is rendered—say in Person county, on Tuesday, the plaintiff takes a transcript and hastens to the county of Granville and has it docketed, another judgment is rendered on Thursday. In Person both judgments relate to the first day of the term, but the judgment docketed in Granville by the plaintiff who has made hot haste, has priority as to the lands in Granville. The remedy for this mischief is an order that the clerk shall not make out transcripts of judgments to be docketed in another county until after the expiration of the term, and a provision that all judgments in one county at the same term, and sent to another county to be docketed, shall be equal in respect to lien, provided they be docketed in reasonable time, say twenty days after the end of the term.

Another instance is this: Several writs of summons are returned before a Justice of the Peace on the same day; it depends upon the Justice which case he will take up first; and should he take up one, he may hold it under consideration and give judgment in another. The plaintiff takes a transcript and in hot haste has it docketed, and thereby acquires a preferable lien. Here a door is left wide open for fraud—the Justice is led into temptation—to say nothing of the indecent rush to get the first judgment. Clerks are relieved from temptation by the ruling, that judgments are

presumed to be docketed the moment a transcript is handed to him. There is no such relief for a Justice of the Peace. The man in whose favor he renders the first judgment makes out a transcript, hurries off to the clerk, and gets the first lien.

The remedy for this mischief will be a rule, that all judgments rendered by a Justice of the Peace upon writs of summons returnable on the same day, shall, when docketed, stand on the same footing in respect to lien, provided such judgment be docketed within reasonable time, say twenty days. These rules and provisions will be in accord with our decision, that judgments rendered at the same term of a County Court, if transferred to the Superior Court in reasonable time, which the C. C. P. fixes at six months, stand on the same footing, provided execution be sued out before a sale on any one of them.

The only difficulty which stood in the way of the conclusion to which we have arrived, is the fact that the words of the Constitution are: "Actions at law and suits in equity pending when this Constitution shall go into effect, shall be transferred without prejudice," &c. Are these words broad enough to include judgments rendered before? We think the words are broad enough. In ordinary acceptation, an action pending means a case going on before judgment; but after judgment, until it becomes dormant, the action is still pending until the judgment be satisfied, for it is still open for execution, which issues upon a presumed motion to that effect; hence the *teste* of an execution is the first day of the preceding term, at which time it is presumed to be moved for; and the judgment is still open for motions to vacate, and the like. So, in contemplation of law, the action is pending until the plaintiff has the fruits of his recovery, or suffers it to become dormant. If this be not so, the Constitution will furnish a striking instance of "*casus omissus*," for there was surely as much occasion for the transfer of un-

satisfied judgments to the new Courts, as for the transfer of actions in which there had been no trial, there is a like reason, and in construing an instrument, which is not supposed to descend to minute particulars and distinctions, the rule is to adopt a liberal construction in aid of all remedial provisions.

The Court is sustained in this construction by the action of the General Assembly. Sec. 403 of the C. C. P., provides : "Existing judgments and decrees not dormant, may in like manner be entered," &c. This is a legislative construction by which the Constitution is taken to provide for the transfer of judgments to the execution docket, as well as for the transfer of actions not tried, to the trial docket, in such a manner as not to prejudice the rights of the parties by reason of a change in the judicial system.

Having concluded that the judgments transferred under the provision of the Constitution and the C. C. P., acquired lien, and stand on the same footing in that respect, we are at a loss to see any ground upon which judgment No. 1 can claim priority, from the fact that a *fi. fa.* had been issued before, for *fi. fas.* upon the three judgments were in the hands of the sheriff at the time of the sale, and under the new order of things the lien has no reference to the *teste* of the *fi. fas.*

The former order will be reversed, and the fund be divided rateably.