The facts were that one W. D. Ross obtained a judgment at Spring Term, 1869, of Guilford Superior Court, against Robert D. Thorn, and had the same docketed the 1st of March, 1869. Four other judgments were rendered at the Fall Term, 1869, of said Court, (577) against the said Robert D. Thorn. James S. Scott obtained a judgment against Thorn at Spring Term, 1867, of Alamance Superior Court of law; a transcript of which said judgment was docketed in Guilford County on the 24th of December, 1869.
The Sheriff returned at Spring Term, 1869, that he had in his hands five hundred and seventy dollars arising from the sale of the property of Robert D. Thorn, having the six executions based upon the foregoing judgments, and asking the advice of the Court as to how the said money shall be applied; and thereupon, the plaintiffs, other than James S. Scott, moved the Court for the application of the money to *Page 448 
the payment of their executions to the exclusion, of the execution of James S. Scott.
All of the said plaintiffs were present in Court, accepted service of a rule, and consented to go into a hearing of said motions. His Honor found as a fact, that executions were regularly issued on the judgment in favor of James S. Scott, to the Sheriff of Guilford County, up to Fall Term, 1868, of the Superior Court of Alamance County, at which Term the said judgment was transferred, and entered on the judgment docket of Alamance Superior Court. The executions issued as aforesaid were returned by the Sheriff of Guilford, without a levy, and that no execution on said judgment was issued from Fall Term, 1868, to Spring Term, 1869, nor from Spring Term, 1869 to Fall Term 1869, and no transcript of said judgment was docketed in Guilford County until December 24th, 1869.
Upon the foregoing facts, his Honor adjudged that the money brought into Court be applied first to the payment of the Ross judgment, then ratably amongst the four judgments docketed on the 6th of September, 1869, and the remainder to the judgment of James S. Scott. From which order Harrison Alexander, assignee of the said Scott, appealed.
1. Causes in law and equity shall be transferred without prejudice by reason of the change. See Constitution, Art. 4, sec. 25.
2. By Legislative construction this has been made to apply to judgments as well. See C.C.P., sec. 403, and Johnson v. Sedberry, 65 N.C. 1. "No lien acquired before the ratification aforesaid, shall be lost by any change of process."
3. Docketed in Guilford Superior Court December 24th, 1869. That was in time, for by sec. 255, C.C.P., executions can issue any time within three years — this section applies to existing judgments. See Harris v.Ricks, 63 N.C. 653. Therefore, if a year and a few days did pass, from the time execution was last returned, that did not prejudice the defendant's rights.
4. The lien of an alias execution relates to the teste of the original. See Allen v. Plummer, 63 N.C. 307.
5. The execution of the oldest teste is entitled to priority. Dunn v.Nichols, 63 N.C. 107.
6. Defendant's execution was in hands of Sheriff at the time of sale and for near two and a half months before. See 65 N.C. 1. *Page 449 
If we ought to have docketed our judgment by transcript in Guilford before others, in order to procure our lien, then the Constitution and the Code secs. 400, 403, had as well not be passed — they are valueless. Without such provisions we would have been ahead of them by that means anyhow. See rules 17 and 18, 63 N.C. 638, 639.
A judgment gives a lien upon all of the real property of the defendant in the County, from the time it is docketed. So the judgment owned by Alexander was properly put last in the order of payment, unless there be some ground for making an (579) exception.
On the argument, Mr. Scott relied upon the provision in regard to existing judgments. "No lien acquired before the ratification aforesaid, shall be lost by any change of process." C.C.P. sec. 403. In this instance, there was a change of process, from an alias and pluries fi. fa, and a venditioni exponas, which might have followed in case of a levy, to the process of taking a transcript to the County of Guilford, and having the judgment docketed, and an execution issued from that county. But the case does not come within that provision, for the party had "acquired nolien." The lien acquired by fi. fa. expires at its return, unless there be a levy, and even the lien acquired by a levy is waived by taking out analias fi. fa. instead of following up the levy, by a ven. ex.
This fatal defect, to-wit: The want of a lien, cannot be supplied by any analogy drawn from Johnson v. Sedberry, 65 N.C. 1, which was relied on for that purpose.
Per curiam.
There is no error.
Cited: Pasour v. Rhyne, 82 N.C. 150.