STEPHEN F. LORD and wife v. MARGARET S. BEARD.

*Practice—Separate action—Evidence—Judge's charge.*

1. A party cannot resort to a new action where the relief demanded can be obtained by motion or proceeding in the original action; *Therefore*, where land belonging to an infant was sold by a Clerk and Master under decree of a former Court of Equity, and the note for the purchase money was executed to him as guardian, (he having become guardian of the infant after the sale), and on settlement the note was thereafter transferred to the ward ; *It was held*, that the ward could not bring an action upon the note and to subject the land to its payment, but was limited to her remedy by motion in the original cause ; and this is so, notwithstanding the fact that the original cause was never docketed pursuant to C. C. P. §§ 400, 401.

2. Where there was a conflict of testimony between two witnesses and it appeared that one (an old person) had had an attack of paralysis ; *Held*, that evidence of an expert that "paralysis in old persons has a tendency to impair the mind" was admissible.

3. Where there was a conflict of evidence as to whether a certain deed had been executed to the defendant by B, a witness for plaintiff, and a letter from one of the defendant's witnesses was introduced as contradictory of her testimony that such deed had been executed ; *Held*, to be error for the Court to charge " that it was for the jury to say whether the letter was inconsistent with any idea that B had made any deed for the premises to the defendant." The only effect the letter could have would be to weaken or discredit the testimony of the witness ; it was not admissible as evidence that B had not made a deed to defendant.

(*Jarman* v. *Saunders*, 64 N. C. 367 ; *Faison* v. *McIlwaine*, 72 N. C. 312 ; *Council* v. *Rivers*, 65 N. C. 54 ; *Mason* v. *Miles*, 63 N. C. 564 ; *Mauney* v. *Pemberton*, 75 N. C. 219 ; *Chambers* v. *Penland*, 78 N. C. 53 ; *Rogers* v. *Holt*, Phil. Eq. 108 ; *Singeltary* v. *Whitaker*, Ib. 77 ; *Gee* v. *Hines*, Ib. 315 ; *Emerson* v. *Mallett*, Ib. 234 ; *Lewis Cotten, ex parte*, Ib. 79 ; *Reid* v. *Pass*, 11 Ire. 589 ; *Johnson* v. *Sedberry*, 65 N. C. 1 ; *Moore* v. *N. C. R. R. Co.*, 74 N. C. 528 ; *Henson* v. *King*, 2 Jones 385 ; *Luther* v. *Skeen*, 8 Jones 356 ; *State* v. *Davis*, 78 N. C. 433, cited, commented on and approved.)

CIVIL ACTION tried at January Special Term, 1878, of ROWAN Superior Court, before *Kerr, J.*

It was admitted that Luke Blackmer was appointed guardian of the feme plaintiff, and that prior to said appointment, the said Blackmer, as clerk and master in equity in obedience to a decree in an ex parte proceeding of the feme plaintiff before her marriage, sold certain real estate near the town of Salisbury, on the 8th of May, 1859, when the defendant became the last and highest bidder at $1,200, and that the defendant afterwards—January 30th, 1863— gave her note to the guardian of the feme plaintiff for the same. The plaintiffs were married in March, 1875, and thereafter the guardian assigned said note to the feme plaintiff, she having arrived at full age.

It was alleged that the note had not been paid and judgment was demanded for the value thereof, but this allegation was denied by the defendant who alleged full payment, but had obtained no title to the land by reason of the fact that the deed which had been executed by said clerk and master was accidently lost or destroyed.

The defendant moved to dismiss the action for want of jurisdiction on the ground that it should have been a motion in the cause (the ex parte proceeding aforesaid). His Honor refused the motion because the said proceeding had been terminated, the case not having been docketed under the Code, and because the note sued on was made payable to Blackmer as guardian, and not as clerk and master in equity. Defendant excepted. Thereupon the jury were empanelled and the evidence was substantially as follows:

The said guardian, witness for plaintiff, testified that he sold the land and took the note to him as guardian as alleged, defendant paid no part thereof, nor did he execute any deed for the premises; that he received for defendant as her agent the sum of $5000 in October, 1863, and defendant requested him to appropriate enough of it to pay her said note, which he declined to do; that he and de-

fendant submitted all matters of difference between them, including the note sued on, to arbitrators who decided that the feme plaintiff was entitled to said note, and in pursuance of the terms of said award, the plaintiffs released the witness from all liability; that he had never been the confidential agent or adviser of the defendant, and that said sum received of her was part of the proceeds of sale of property by her to one Hall for $10,000, one half of which she invested in Confederate bonds, and the balance he received as aforesaid, and paid it out for her as she directed, and several hundred dollars besides; and that she at the same time owed him a considerable sum as clerk and master.

The deposition of defendant was then read in evidence. The deponent testified that she paid Blackmer in June, 1862, four hundred dollars on her purchase, and he promised her to appropriate enough of the $5,000 to pay off the balance of the note; that in 1864 he as clerk and master executed and delivered to her a deed for the premises, which she handed to him to be registered, but was not registered, Blackmer telling her that it had been destroyed during the occupancy of said town by the federal troops, and that he would make her another deed. Deponent also testified that she was sixty-eight years old.

Dr. Summerell was next introduced and testified that he was a physician, knew the defendant well, met her about fifteen months before this trial and after she had received a stroke of paralysis, and that he could then discover no impairment of her faculties. On the cross-examination of this witness, the plaintiff proposed to ask if paralysis did not have a tendency in old persons to impair the mind. This was objected to by defendant, objection overruled, and defendant excepted. The witness then stated that paralysis did have that tendency.

Julia Beard, witness for defendant, testified that Blackmer was for a long time before June, 1863, and until after

the close of the late war the attorney and confidential adviser and agent of defendant ; that she was present when defendant asked him to take pay for said premises out of the $5,000 ; he at first declined, saying he would not accept Confederate money for the property, but afterwards in the same conversation he said that he would make an exception with defendant and apply the money as requested ;. and corroborated said deponent in her evidence touching the lost deed.

Upon her cross-examination a letter purporting to have been written by her on the 5th of May, 1869, to Blackmer was shown to witness and admitted to be hers.   The plaintiff recalled Blackmer, who, after recapitulating his testimony in respect to said payments by the direction of defendant, stated that said payments were made between December, 1863, and March, 1865.   And then the plaintiff put said letter in evidence in which the writer stated substantially that the defendant (her mother) was quite unwell and seemed to be troubled about the title to said property, appealed to Mr. Blackmer to have it arranged, and believed that her mother could prevail upon members of her family to sign the paper writing which he had required as the condition upon which the title would be made.

His Honor charged the jury that the note sued on being admitted, the burden was on the defendant to show that it was obtained by fraud, accident or mistake ; that it was for them to say whether said letter was inconsistent with any idea that Blackmer had ever made any deed to defendant for the premises.   Defendant excepted, and in writing requested the Court to charge,—that there is evidence that the relation between the defendant and Blackmer at the time the note was given was of such a character as to relieve defendant from proof of fraud, and the fraud was suggested only with reference to the execution of the bond.   His Honor declined to give the instruction and the defendant excepted.

Upon the issues submitted there was a verdict for plaintiffs. Judgment. Appeal by defendant.

*Messrs. J. S. Henderson* and *J. M. McCorkle,* for plaintiffs. *Mr. W. H. Bailey,* for defendant.

BYNUM, J. An original action begun by summons and complaint. In 1859, the land of the feme plaintiff was sold by the clerk and master under a decree of Court, made in a suit in equity instituted in her name, and the defendant became the purchaser. The clerk and master after the sale became the guardian of the feme plaintiff, and in 1863, the defendant executed to him as guardian a note for the purchase money, bearing interest from the date of sale, which note the guardian endorsed to the feme plaintiff in 1876, after her marriage with the male plaintiff. So that in this action we have the same person as plaintiff, who was plaintiff in the original suit for the sale of the land, and the same person as defendant, who was the purchaser at that sale.

The objection is made to the jurisdiction of the Court, and it is fatal to the action. It has been repeatedly held by this Court, that a party can not resort to a new action, where the relief he demands can be had by motion or proceeding in the original action, and emphatic warning has been given against the error of seeking relief by a separate action in such cases.

In the earlier stages of the practice under the Code of Civil Procedure, before the profession had fairly adjusted themselves to the new practice, the summons and complaint were sometimes treated as a motion in the cause, as in the cause of *Jarman* v. *Saunders,* 64 N. C. 367. But in the subsequent case of *Faison* v. *McIlwaine,* 72 N. C. 312, referring to *Jarman* v. *Saunders* and speaking for the Court, RODMAN, J. said: "In this last case, a proceeding like the present was

regarded as a motion in the original action, but the decision on that point of practice was there put on the ground, that the Code had been but recently introduced, and the practice arising out of it could not be supposed to be known to the profession universally. That excuse for irregularity should by this time have ceased to exist."

In *Council* v. *Rivers*, 65 N. C. 54, a civil action was brought to recover the amount of a bond given for the purchase of a tract of land sold by the clerk and master under the order of the late Court of Equity; *it was held* that the action could not be sustained, because the Superior Court has under the present system succeeded to the jurisdiction of the Court of Equity, and has plenary power by an order in the cause to compel the purchaser to pay the debt, and the action was dismissed. The same principle is announced in *Mason* v. *Miles*, 63 N. C. 564; *Mauney* v. *Pemberton*, 75 N. C. 219; *Chambers* v. *Penland*, 78 N. C., 53.

But it is insisted that where the sale has been made by the clerk and master, and the bond for the purchase money has been executed to the guardian of the ward, or by him assigned as in this case to the ward, the latter can sustain an original action. We perceive no reason for the distinction. The rights and remedies of the parties remain the same. It is still the same feme plaintiff whose land was sold, proceeding by a new action against the purchaser for the purchase money, and seeking to subject the land to its payment. The jurisdiction of the Court can not be shifted by a change in the payee of the note, which is only technical at most, and the effect of which is merely to convey the legal title in the note to the true owner.

But without reference to the practice under the Code, by recurring to the practice in equity prior to the Code, it is seen that the same rule prevailed, that the remedy must be sought in the original suit, else the new action would be dismissed.

In *Rogers* v. *Holt*, Phil. Eq. 108, the bill recited that a petition for a sale of land had been filed and was still pending in the same Court, and that the money was still due by the purchaser; and prayed that inasmuch as the price bid was based upon Confederate currency, the purchaser and his sureties should be decreed to pay its reasonable value; *it was held* that as this relief was no other than might have been had in the petition then pending, the bill would not be entertained, and it was dismissed.

The case of *Singeltary* v. *Whitaker*, Phil. Eq. 77, was similar to the present, and is an answer to the claim of jurisdiction here, because the notes are made payable to the guardian. There, land had been sold under a petition in the name of an infant. The sale was confirmed and the master ordered to collect the note when due, and upon payment, to make title. At another term the Court ordered the master to pay the note over to the infant's guardian. This was done and the master made title to the purchaser. On a petition *filed in the cause* by the infant on coming of age, praying that the land might still be held subject to the payment of the purchase money, *it was held* that the deed was irregular and invalid, and that the petitioner was entitled to relief. It was insisted in that case that the transfer of the note by the master to the guardian, destroyed the lien upon the land, but it was held otherwise. See also *Cotten Ex Parte*, Phil. Eq. 79; *Gee* v. *Hines*, Ib. 315; and *Emerson* v. *Mallett*, Ib. 234.

What was the regular course of proceedings in suits in equity prior to the Code, is now, under the Code, the established practice in all judicial proceedings without reference to their equitable or legal nature. *Reid* v. *Pass*, 11 Ire. 589.

The plaintiffs contend, however, that the original suit in equity under which the land was sold in 1859, is not now pending, because not having been docketed pursuant to C. C. P., §§ 400, 401, it has abated, and no motion can now be

made in the cause. But it has been repeatedly held by this Court, that an action is pending until the final judgment in the cause is satisfied, or until the plaintiff has obtained the fruits of his recovery. *Johnson* v. *Sedberry,* 65 N. C. 1. Section 401 of the Code is not self-executing, but the action can be abated only on motion of a party, and by the judgment of the Court, as was held in *Moore* v. *N. C. R. R. Co.,* 74 N. C. 528. No such judgment having been given in this case, in fact and in contemplation of law, the original action is still pending, and under the various remedial statutes can be, upon the application of the party, brought forward upon the docket, and be proceeded in by any appropriate motion. The plaintiffs can not be allowed to prosecute a new action by alleging their own default in not keeping upon the docket the original suit.

As in another trial the same exceptions to the testimony admitted, and to the charge of the Court may arise, as have been presented in this, it may be best to decide them now :—

1. Mrs. Beard having been examined as a witness in her own behalf, and it appearing that she was an aged woman and had had an attack of paralysis, Dr. Summerell was examined in her support, and testified that he knew her well, and had seen her about fifteen months subsequent to her paralytic attack, and that he could then discover no impairment of her faculties. On cross-examination the plaintiff proposed to ask the witness, if paralysis did not have a tendency to impair the mind, in old persons. The evidence was objected to by the defendant, but was admitted by the Court, and the witness answered that it did have that tendency. The evidence was admissible. There was a direct conflict of testimony between Blackmer and Mrs. Beard, and it was material for the jury to know which of the two was more reliable; and to that end it was competent for an expert to testify as to the tendency of a disease with which she was affected, to impair those faculties of

the mind, the full possession of which most fit a witness to give exact and truthful testimony. 1 Greenl. Ev. 552. The evidence of the expert went to weaken the force of the testimony of Mrs. Beard. 1 Starkie Ev. 824.

2. Mrs. Beard had sworn in her examination that she had paid the note sued on in October, 1863, and that a deed was executed to her; and Julia Beard, her daughter, was introduced and confirmed her mother by testifying that she was present when Blackmer received the money in satisfaction of the debt, and executed the deed. On cross-examination the witness admitted, on its being shown to her, that she had written a letter to Blackmer, dated in May, 1869, which was read to the jury, and insisted to be contradictory to her evidence as to the payment of the debt to Blackmer, and the execution of a deed by him.

Upon this part of the case His Honor charged: "That it was for the jury to say whether the letter written by Julia Beard, dated May 5th, 1869, was inconsistent with any idea that Blackmer had made any deed for the premises to the defendant." The only effect the letter could have was to weaken or discredit the testimony of the witness; and it was not admissible as evidence that Blackmer had not made a deed for the premises to the defendant. To give it that effect would be to make it substantive evidence as to the matter in controversy. The charge was therefore erroneous and calculated to mislead the jury, falling directly within the principle decided in *Henson* v. *King,* 2 Jones 385; *Luther* v. *Skeen,* 8 Jones 356; *State* v. *Davis,* 78 N. C. 433; 1 Starkie Ev. 238–41.

Error.

PER CURIAM. Judgment reversed and action dismissed.