GEORGE LYNN and others v. CANNADY LOWE, Adm'r, and others.

*Judgment—Statute of Limitations—Motion in the Cause—Writs of error abolished.*

1. A judgment rendered against a party after his death is irregular, where there was service of process and appearance, but no suggestion of the death; and the same will be set aside, in a direct proceeding for that purpose, so that the representative may have an opportunity to resist a recovery.

2. The statute of limitations in such case begins to run from the date of the appointment of the administrator, and the plea of the statute must be set up in the answer.

3. A motion in the pending cause to vacate an unsatisfied judgment, is the proper proceeding for the aggrieved party.

4. Writs of error are abolished, and section 296 of the Code, in reference to appeals, substituted.

5. The court does not pass upon the *bona fides* of the deed mentioned in the case.

(Mr. Justice RUFFIN dissenting).

(*Colson* v. *Wade*, 1 Mur., 43; *Burke* v. *Stokely*, 65 N. C., 569; *Aycock* v. *Harrison*, 71 N. C., 432; *Doyle* v. *Brown*, 72 N. C., 393; *Godley* v. *Taylor*, 3 Dev., 178; *Kahnweiler* v. *Anderson*, 78 N. C., 133; *Bacon* v. *Berry*, 85 N. C., 124, and case cited; *Long* v. *Cole*, 72 N. C., 20; *Askew* v. *Capehart*, 79 N. C., 17; *Kemp* v. *Kemp*, 85 N. C., 491, and cases cited, approved).

PETITION of defendants to vacate a judgment heard at June Term, 1882, of WAKE Superior Court, before *Bennett, J.*

The plaintiffs commenced their action by suing out process in the late superior court of Wake, returnable to spring term, 1868, against the defendant Cannady Lowe, as administrator of Hugh E. Lynn, principal, and Joseph Scott and others, sureties, on the guardian bond of the intestate, to recover the amount of the trust fund in his hands.

Upon the return of the writ, the defendants appeared by attorneys, whose names are entered in the cause on the docket.

The record shows that oyer of the bond sued on was craved and had, but not that any pleading or memorandum of such, under the practice then prevailing, accepted as an equivalent, was then or at any subsequent term filed or marked.

On May 3d, thereafter, and before the next term, Joseph Scott died intestate, of which event no notice was taken in the further prosecution of the cause, and no administration was taken on his estate until the issue of letters on February 16th, 1880, to Andrew Syme.

At spring term, 1869, of the present successor superior court, an order of reference was made to George M. Whiting to state an account of the administration of the trust estate, and George H. Snow afterwards, by consent, substituted in his place, as referee, returned his report to the following term.

At a special term held in December, thereafter, a *nol. pros.* was entered as to the defendant, Stephen Lowe, the report confirmed, and a jury verdict rendered assessing the damages and distributing the amount among the several relators, according to their several shares, at the sum of $5,937.22, and judgment accordingly entered against the defendants, Cannady Lowe and Joseph Scott, personally, as surety obligors, and against the former and others in their representative capacities, representing other deceased obligors, and for the costs of the action.

In February, 1879, the relators sued out a summons against the widow and others, heirs-at-law of Joseph Scott, all of whose

names were subsequently stricken out except that of his daughter, Margaret, who is left sole defendant in the action, and at spring term, 1879, filed their complaint setting out the former judgment and a series of partial payment thereon, and alleging that Joseph Scott in his life-time owned a tract of land therein described, and undertook to convey the same to the said Margaret with intent to defraud his creditors, and did execute a deed to her therefor, falsely reciting a valuable consideration as paid; that there are no personal assets of the intestate to be administered and requiring a personal representative; and demanding that the said deed be adjudged fraudulent and void, the residue of said judgment a lien thereon, and that the same be sold and the moneys arising therefrom applied towards the discharge.

The defendants, none of them, were aware of the recovery of the judgment against said Scott, until February 7th, 1879, when process in the last action was served on the defendant, Margaret, and a few days later she procured the issue of letters of administration to said Syme, and he and the other petitioners on the same day commenced the present proceedings, to have the judgment vacated and set aside, as to the intestate.

Upon the hearing, the motion of the plaintiffs to dismiss the petition for alleged informalities was denied, and that of the petitioners for a modification of the judgment refused, and from these rulings the parties respectively, against whom they are made, appeal to this court.

*Messrs. Mason & Devereux* and *Argo & Wilder*, for plaintiffs.
*Messrs. Pace & Holding* and *Strong & Smedes*, for defendants.

SMITH, C. J., after stating the facts. Passing by many of the objections raised by the appellees, plaintiffs, to the regularity and legal sufficiency of the method of procedure adopted for the reformation of the original judgment, and the exoneration of the intestate therefrom, mostly of a technical character and belonging to the old system of legal practice, we proceed to consider

those based upon the merits of the case, and against the granting of any relief in the premises.

It is insisted that the judgment ought not to be disturbed, after the lapse of so long a period of time since its rendition, and because it is not alleged or shown that there is any meritorious defence to the recovery, of the opportunity of setting up which the deceased debtor has been deprived.

There is a want of harmony in the adjudicated cases cited in Freeman on Judgments in the notes to sections 140 and 153, upon the void or voidable character of a judgment rendered upon an acquired jurisdiction over the person of the debtor, but after his death, whether ascertained and declared in the record or not, and whether it is an irregularity or error in law. But in *Colson's Ex'rs,* v. *Wade's Ex'rs,* 1 Murph., 43, in a short opinion, it is declared that the judgment "is erroneous and void in law," having been rendered after the death of the party. So the late Chief-Justice in *Burke* v. *Stokely,* 65 N. C., 569, says: "It was the business of the plaintiff to make this suggestion (the death of a defendant), as it is error in fact to take judgment against one who is dead." And later still, RODMAN, J., delivering the opinion in *Aycock* v. *Harrison,* 71 N. C., 432, uses these words: "When a party to an action dies after judgment, the action abates, just as it would by his death before judgment, unless it be revived by or against his personal representative, as was provided by Rev. Code, ch. 1, § 1."

In *Doyle* v. *Brown,* 72 N. C., 393, READE, J., declares that when a person has never been served with process, nor appeared in person or by attorney, a judgment against him is not simply voidable, but void; and it may be so treated whenever and wherever offered, without any direct proceeding to vacate it. The reason is that the want of process and the want of appearance are shown by the record itself whenever it is offered. It would be otherwise if the record showed service of process or appearance, when in fact there had been none. In such case, the

61

judgment would be apparently regular, and would be conclusive until by a direct proceeding for the purpose, it could be vacated."

This would seem to point out the propriety of the course pursued in the case before us, since, irrespective of the character of the judgment as irregular or erroneous and voidable only when so ascertained and declared, upon its face and in the disclosures of the record it is regular and valid, and can only be assailed and corrected by a direct proceeding. As life is presumed to continue in the absence of any suggestion to the contrary in the record, the defendant, it must be assumed, was living at the time of its rendition, and no evidence collaterally produced will be allowed to either party to controvert its verity. It was obviously the plaintiffs' duty to prevent an abatement of their action to bring the fact of the defendant's death to the notice of the court, and make the other necessary parties in consequence thereof, in order to proceed with the cause. It could not be the duty of any other, since the event that sealed the lips of the deceased recalled the authority of his attorney longer to represent him. The results of the failure to do this must fall upon him and them, who are in default, and he cannot complain that he loses the supposed fruits of his recovery.

But it is not required, in determining the controversy, to ascertain whether the judgment be void from the beginning, when the facts are adjudicated, or voidable only, and void from the time of such adjudication for future purposes, since, so far as the case discloses, no intervening rights resting upon such judgment have accrued to third persons, and to the present petitioners the same consequences follow in either case.

We put our decision upon ground common to both. It is the clear right of every person to be heard before any action is invoked and had before a judicial tribunal, affecting his rights of person or property. If no opportunity has been offered, and such prejudicial action has been taken, as well when he was never made a party as when by death he has ceased to be, in either case, the severance being equally effectual and absolute, the court will,

at once, when judicially informed of the error, correct it, and relieve him and his estate from the wrong, not because injustice is done in the particular case, but because it may have been done, and the inflexible maxim *audi alteram partem* will be maintained. In such case the court does not investigate the merits of the matter in dispute, but sets aside the judgment, and re-opens the otherwise concluded matter, to afford the representative the opportunity, not open to his intestate and which the law accords to all, of being heard in opposition.

Has this right been lost by delay, or is the remedy sought barred by the statute of limitations?

The plaintiffs insist that both obstructions are fatal to the proceeding, and we will now examine the force of these objections, as pointed out and urged in argument.

1. It is insisted that this being error in fact, or in the nature of a writ of error *coram nobis*, the action should have been brought within five years after the entry of judgment, as directed in Rev. Code, ch. 4, § 18. But this section is repealed by C. C. P., § 296, which abolishes writs of error, and substitutes a new system of appellate and supervisory jurisdiction for the correction of errors, as does the statute prescribing limitations in the Code displace those contained in the Revised Code.

2. If the case falls under section 37 of the Code, which provides for actions for relief not specified in the preceding limitations, and allows ten years in which to bring them, a period that had just expired when the application was presented, it is enough to say that the statute did not begin to run until there was a person *in esse* competent to begin the suit, that is, until the appointment of an administrator. This is a well recognized rule. *Murray* v. *The E. G. Co.*, 7 Eng. C. L. Rep., 66; *Godley* v. *Taylor*, 3 Dev., 178.

3. The defence can only be set up in an answer, and here it is simply one of the assigned reasons for the motion to dismiss. C. C. P., § 17. *Green* v. *N. C. R. R. Co.*, 73 N. C., 524; *Kahnweiller* v. *Anderson*, 78 N. C., 133; *Bacon* v. *Berry*, 85 N. C., 124.

4. The proceeding is, by motion, in a pending cause, since, until the judgment is satisfied, it is not considered as at an end. *Long* v. *Cole,* 72 N. C., 20; *Lord* v. *Beard,* 79 N. C., 5; *Askew* v. *Capehart,* 79 N. C., 17; *Kemp* v. *Kemp,* 85 N. C., 491.

5. The same answer may be made to the imputed laches of the petitioners. Besides, it is found as a fact that the existence of the judgment was unknown to all of them, until the summons in the last action was served, and soon afterwards steps were taken to correct the error in its rendition, and avert the consequences of its being allowed to remain.

It is again insisted that the conveyance of the land by the deceased was fraudulent, and the present movement is intended to protect it from liability to the recovered debt, and is not entitled to favor.

We do not enter into an inquiry as to the *bona fides* of the assailed deed, nor assume as a fact its fraudulent character. If it be such, it may be subjected to the intestate's debts as effectually upon a judgment hereafter recovered, since the liability upon the bond is unaffected by any limitation other than that raising a presumption of payment, and may be still asserted. But if it were otherwise, that cannot debar the administrator the right to contest the claim as to its validity, as well as amount; and the result of the proposed modification will only remove the conclusiveness of the adjudication, as a bar to the administrator, and allow him to be heard, when it is again sought to enforce the liability upon the bond.

This general review will dispose of other objections urged against the petitioner's demand for relief, which, with others appearing in the statement of the case, are, in our opinion, equally untenable.

There is error in the refusal of the court to disturb the judgment, and the appellants on the facts are entitled to have the judgment corrected.

This will be certified to the court below for further proceed-

ings in conformity with the law as declared in this opinion. The appellants will recover their costs.

Ruffin, J., *dissenting.* The action was instituted, and the process regularly served upon all the defendants, including the intestate, Scott, returnable to spring term, 1868, of Wake superior court. At the return term an appearance was entered of record for all the defendants, and oyer of the cause of action craved and had, but no defences of any sort entered of record for them.

At spring term, 1869, a reference was made to ascertain the amount of the plaintiffs' demand, and upon the coming in of the report at the December term of that year, the same was confirmed, and judgment rendered against all the defendants of record, the intestate, Scott, having, however, in the meantime died, but no suggestion of his death being entered of record.

In 1879, Andrew Syme qualified as the administrator of the said Scott, and soon thereafter commenced proceedings to have the judgment set aside as to his intestate, purely upon the ground that it was taken after his death, and before the appointment of an administrator, but without venturing to deny the validity of the claim for which the judgment was rendered, or setting up any defence thereto.

Under these circumstances, the judge below did not deem it just to set aside the judgment, and therefore overruled the motion looking to that end, and in so doing I cannot concur with the majority of this court in thinking that he committed an error.

In reaching a conclusion upon the subject, I have felt controlled by what I conceive to be two important principles, but which my brethren seem to think not entitled to so much weight. The fact is, that a judgment taken against a deceased party upon whom there had been personal service of process and an appearance entered of record in his life-time, is not *void*, but simply erroneous, and to be corrected only upon a writ of error *coram nobis;* and the other is, that such a writ is never a matter of

right, but is granted or not at the sound discretion of the court, and never, unless the party make a show of merit in his application for it.

1. In Freeman on Judgments, § 140, it is expressly said that if jurisdiction be once obtained over the defendant in his life-time, a judgment rendered against him subsequently to his death is not void, but erroneous, and in section 153 the reason given for it is, that the court, having acquired jurisdiction over the party in his life-time, is thereby empowered to proceed with the action to final judgment, and while it ought to cease the exercise of its jurisdiction after the party dies, still its failure to do so amounts only to an error, to be corrected upon an appeal, in case the fact of the death appear of record, or by a writ of error *coram nobis*, if it have to be shown *aliunde*.

In *Warder* v. *Tainter*, 4 Watts, 270, the court say, that the authorities are abundant to show, that in no case is a judgment rendered by a court of competent jurisdiction considered void on account of the death of the defendant having occurred before its rendition, but after the service of process upon him; and that at most it is only avoidable and subject to be reversed upon a writ of error, but in no other way. And again, the same court say, in *Yaple* v. *Titus*, 41 Penn. St. Rep., 195, that the law is well settled that the death of a defendant does not take away the jurisdiction of the court after it has once attached, so as to render void a judgment subsequently given against him; that such a judgment is reversible only upon an appeal, or by a writ of error *coram nobis*.

In *Collins* v. *Mitchell*, 5 Florida, 364, and in *Coleman* v. *McAnulty*, 16 Mo., 173, exactly the same doctrine is held, that a judgment is not void because of the death of the defendant pending the suit, and before its rendition, but that it is erroneous, and can only be avoided in the manner that other judgments are gotten rid of that are erroneous in matter of law or fact.

These authorities I have referred to, not for the purpose of showing the origin of the principle upon which I rely, but to

show how generally it has been accepted by the courts, even in modern times. But the truth is, that the doctrine is a very old one, being clearly laid down in Tidd's Practice, 1136; Comyn's Digest, *Title Pleader* (3 B., 1); 2 Ld. Raymond, 1414; 2 Saunders' Rep., 101, and recognized in 3 Bacon Abridg., 294.

In Saunders, it is said that an assignment of errors is in the nature of a declaration, and is either of error in fact, or error in law. The former consists of matters of fact not appearing on the face of the record, which, if true, prove the judgment to have been erroneous; as, that the defendant died before verdict or judgment, &c., in which case the remedy is by writ of error *coram nobis.*

In *Arrowood* v. *Greenwood*, 5 Jones, 414, the late Chief Justice PEARSON concisely and sharply drew the distinction between such judgments as are void, such as are irregular, and such as are erroneous because of a fact not presented by the record, or of which the court had no knowledge, and he declares that the only mode by which a judgment of the last sort can be corrected is by writ of error for matter of fact.

2. A writ of error *coram nobis* is not a writ of right. In *Tyler* v. *Morris*, 4 Dev. & Bat., 487, a motion was made for such a writ for error in fact, in that the plaintiff was dead at the time the judgment was rendered, but as there was conflict in the testimony as to his being dead, the motion was denied and the defendant appealed. In delivering the opinion of the court and after referring to the English precedents, Judge DANIEL, without any apparent reservation, declared that a writ of error *coram nobis* is not a writ of right, but rests in the discretion of the court before which the application is made, and that before it could be allowed, there must be an affidavit of merits, setting forth some error in *fact*, by which, in case the fact assigned for error be true, the plaintiff's right of action would be destroyed.

In *Smith* v. *Kingsley*, 19 Wend., 620, the supreme court of New York say, that a writ for an error in fact is not a writ of right, and to warrant its allowance there must be an affidavit of

some such error in fact as will destroy the plaintiff's right to have judgment. And so it was laid down by DENISON, J., in *Ribout* v. *Wheeler*, Sayer's Rep., 166.

In *Winslow* v. *Anderson*, 3 Dev. & Bat., 9, an application for a writ of this nature was refused upon the ground that the judge below, as he conceived, had no power to grant it, and upon appeal to this court his judgment was for that reason reversed; but the court say, they wish it to be distinctly understood that if the court below had refused the writ in the exercise of its discretion, they would neither have had the inclination nor the authority to interfere with its action in the premises.

It is true, that in some of the cases there are to be found occasional expressions which seem to speak of judgments taken under the circumstances that this one was, as being absolutely void, and there are a few decisions, though none in this court, which look in the same direction. But the great weight of the authorities, whether we consider their number or the character of the courts from which they proceed, tends strongly the other way, and serves to convince my mind that the view which His Honor took of the matter was the correct one—that is to say, that the judgment is not void, and that though erroneous, inasmuch as it was rendered after the death of the defendant, yet the court will not, for that reason alone, vacate it, unless it be shown, or at least alleged, that it does injustice to some one. Why set it aside, however rendered, if it be for an honest debt, and for the true amount? and if not so, why didn't the administrator, who alone is presumed to know, so declare in his application?

I am far, however, from thinking that the plaintiffs should be permitted to enforce the collection of their judgment without giving the administrator, or the heir, an opportunity to show cause against it. To this end, I think, an issue in the nature of a *scire facias* should be directed to be tried as to the merits, if any plea they have; but in the meantime that the judgment

should stand, with its liens unimpaired, as a security for such amount as might ultimately be found to be due the plaintiffs. In this way and in this way alone, as it seems to me, can the full rights of all the parties be protected, without the least risk of doing injustice to any. But to my mind, it is a hard measure to mete out to the plaintiffs to strike their judgment from the docket as being void, after it has stood for so many years, and to put them to prove their claims anew, now that their witnesses may be dead, or their proofs lost.

Upon the point as to the statute of limitations, I fully concur in the views expressed by the Chief-Justice in his opinion, and also in holding that under our present system a party may have the benefit of a writ of error *coram nobis* upon a motion made in the cause, *Nelson* v. *Brown*, 2 Mo., 20. But as our statute (Rev. Code, ch. 4, § 20) expressly provides that every person who may bring a writ of error shall execute a bond with security to abide by and perform the judgment which may be finally given, I cannot understand how the parties who make this application can be excused therefrom.

PER CURIAM.                                    Reversed.